Will the clerk call the case please? 121-0993 to equal, first year, Araiza. Good afternoon ladies and gentlemen. Welcome to the appellate court, 5th division. And I want to welcome you here again and just to let you know a couple preliminaries. Pursuant to Supreme Court Rule 352B, you're allowed 20 minutes for the appellant and then 15 and then 20 I should say and then 10 at the end. So you don't have to go that long if you don't want to. I would advise you that we've read the briefs very carefully and the case law as well and we're up to date on everything on the case. Now, you probably want to get to your first, most important arguments first. Again, I'm not going to tell you how to proceed. The other thing is we have these lovely screens up now, which are nice, but we found out the first time we were out here that it was a little hard for us to hear a person in the 1 and 3 spot because of these being in the way. So we might be talking a little loud to you, but we don't mean to be rude. We just want to make sure that everybody can hear the questions and the responses. So, will the lawyers just come on up and identify themselves to the record please? Hi, Katie Anderson from the State Appellate Defender on behalf of Mr. Areza. Thank you. Good afternoon, Your Honors. Assistant State's Attorney Julie Rixey on behalf of the people. Hi, Sylvia Larson. R-I-E-K-S-E. Thank you. All right, thank you very much. And, Counsel Anderson, are you ready to proceed? Yes. If you would, Counsel. May it please the Court, my name is Katie Anderson, and on behalf of the State Appellate Defender, I represent Mr. Areza, and I would like to reserve two minutes of my time for rebuttal. Sure. Your Honors, this case is about two things. Number one, who has the authority to suspend the Speedy Trial Act in light of the COVID-19 pandemic? Let me ask this. Hold on for one second, Counsel. Can you hear, Counsel? I was just going to ask her to move closer to the microphone. Yeah. We'll ask the folks in the back maybe to turn it up a little. Okay, fine. All right. This case is about two things. Number one, who had the authority to suspend the Speedy Trial Act in light of the COVID-19 pandemic? And number two, how long we can incarcerate an individual who has not been convicted of a crime and has repeatedly demanded trial? In Illinois, the authority to suspend the Speedy Trial Act is vested in the legislative and the executive branch, not the Illinois Supreme Court. Therefore, Mr. Areza's rights were violated when, despite his repeated demands for trial, his trial was delayed for over 300 days, during which time he remained incarcerated in the Cook County Jail. The Speedy Trial Act is a limit on the state's prosecutorial authority. The Act's provisions are mandatory, and they confer a substantial and absolute right upon the defendant under the Constitution. The statute permits the Speedy Trial Right to be suspended only in four narrow circumstances, none of which apply here. Unlike the federal statute, Illinois' Speedy Trial Act does not contain a catch-all exemption that allows courts the authority to delay trials in the interest of justice or due to an emergency. In Waddell, which addressed the intersection of the Interstate Detainer Statute and the Speedy Trial Act, the Illinois Supreme Court found that where the statute at issue protects and effectuates an accused constitutional rights, the suggestion that we constrain the statute's scope in a way not specifically authorized by the legislature is simply untenable. So has this issue been litigated before? This issue has been litigated in the Second District in Mayfield, which is published. The Illinois Supreme Court granted the defense's petition for leave to appeal in that case, and that case has been fully briefed before the Illinois Supreme Court and is awaiting a decision. There have been decisions from other appellate districts, but they all remain unpublished. Is there anything factual in that case that distinguishes it from this case? There is nothing factual in Mayfield that would distinguish it from this case. This is a strict Speedy Trial issue that is reviewed de novo. This is along the same lines as Justice Cotter's question. This is not an issue that's unique to Illinois in the sense that COVID and delays and closings were occurring all over the country. I don't see a lot from either side talking about precedents from other states, and I presume there might be some out there. Is there anything you can address on that? There is nothing that I can address at this moment. However, if this Court is interested in that, I can submit a supplemental brief addressing how other states have addressed the COVID-19 pandemic. And with regard to other states, how states handle this may be on somewhat of a case-by-case basis, because, for example, in Illinois, we have a state-specific Speedy Trial statute. In states where their Speedy Trial statute does have a catch-all or emergency provision, the results would expect it to be different in those states because those states would have specifically reserved that as a reason to suspend the Speedy Trial Act. In Illinois, the legislature chose not to include that exception. Ms. Anderson, I'm just trying to get an understanding of the precise issue. To rule in your favor, we would have to hold that the state that the Supreme Court's tolling order violated separation of powers. In essence, that's your argument. That is correct. Do we have the authority to do that? Let's say a lower court. Generally speaking, in my experience, I can't find any authority for a lower court to review a Supreme Court order, right? I can't cite any case specifically on point. However, it would be, for example, within the purview of this court to review, for example, Illinois Supreme Court rules. So I would argue that that would be analogous. Just as this court could review the constitutionality of those rules and procedures, it could also review the constitutionality of the Illinois Supreme Court order. The Supreme Court rules are adapted by an order of a higher court, and we are operating under the principle of vertical stare decisis. So, you know, Justice Mitchell raises an apt question. Is the Illinois appellate court the right forum to give your client remedy? In my opinion, it is. However, if this court does not believe that this is the correct forum, it could issue a decision to that effect and stating that it would like to defer to the Illinois Supreme Court decision in Mayfield. And that would be an appropriate way that this court could resolve that case if that is what is of concern to this court. Could somebody ask about the catch-all argument we're making? Do you know the legislative history of that? Did the legislature not go into that, even discuss it? Or do we have any idea why it is or is not provided for? I have not reviewed the legislative history from that statute, and I am unclear as to why the legislature chose not to include that catch-all provision. The legislature was in session during the pandemic, though, and they did not choose to amend the speedy trial statute to include that provision, nor did they take any other action that would potentially impact the Speedy Trial Act as it relates to this case. Notably, though, the legislature did pass several other coronavirus-related measures during that time. Do you make anything of the delay that's specific here in Cook County? That is to say, we know, if my recollection is right, in August of 2020, down the street from the front of the building, they held a jury trial, the case that was at turn. We know in Collier County and DuPage County, they were able to accommodate jury trials in a specially designed room where they spread out the jurors. And yet it was a significant delay after that in Cook County before we had any jury trials, at least six months. What do you make of that sort of a patchwork that we have a situation where if you happen to be a defendant in Cook County, you just are going to have to wait six more months than if you were a defendant in DuPage County? Your Honor, that is precisely part of the problem here, is that how long defendants could be held in custody was in some way, in many cases, dependent on where they were in the state. If my client was elsewhere in the state, he may not have had to have been held in custody for so long. And that is precisely why this Court should hold that the Illinois, one of the reasons why this Court should hold that the Illinois Supreme Court exceeded its authority, because that order did allow for justice to be administered on kind of a piecemeal basis, where some defendants were still given protections that others were not. And specifically in Cook County, the Northern District of Illinois issued a decision where they acknowledged that the Cook County Jail was one of the worst places in the country during the pandemic, with one of the highest infection rates for COVID-19. My client, who was in very poor health prior to the pandemic, was trapped in Cook County Jail with no way to be released during the pandemic, which was particularly dangerous to his health. Do you have a sense of how many of these cases there are in Cook County where a term, where there was a demand and the term was blown, but in reliance upon the Supreme Court order? I don't have a number. If that's something that the justices are interested in, I can... Just a curiosity. Counsel, are you saying that this order, any of the orders that were promulgated by the Illinois Supreme Court or the Circuit Court, were beyond their authority? Yes. To the extent that the orders conflicted with the Illinois Speedy Trial Act, they were beyond the Court's general and supervisory authority. The Speedy Trial Act is not a matter of mere procedure or scheduling trials. It is a hard limitation on the State's authority to prosecute. So the order was constitutional in all other respects, except where it intersected with the Speedy Trial Act to abridge the defendant's rights. Do you know of any instance where the Illinois Supreme Court has relied upon its supervisory authority to effectively repeal part of the statute? Has it ever happened before? I cannot cite a case in which it has happened. However, it's possible that it has happened. Again, in that vein, we do have case law, which I think the State cites, that says both the legislature and the judicial branch have some authority over court procedures, and that when an Illinois Supreme Court rule conflicts with a legislative enactment, the Illinois Supreme Court rule will go with respect to court procedure. How do you get around that doctrine? So first, this is not merely a matter of procedure. This is not just about when is the appropriate time or place to hold a trial. This is about whether the State still has the authority to prosecute. And the legislature set hard deadlines for the State's authority to prosecute in that Speedy Trial Act. The State's authority to prosecute cuts off at either 120 or 160 days, depending on the circumstances under that Speedy Trial Statute, where the defendant, like here, has repeatedly demanded trial. Also, one of the primary cases that the State is relying on for that proposition is the Kunkel case. And that is actually distinguishable in several critical respects. So at issue in Kunkel was whether a newly enacted statute, which addressed discovery in certain civil cases, was unconstitutional because it conflicted with the Illinois Supreme Court rules governing discovery. Those rules were, number one, designed to provide a comprehensive set of discovery rules. And number two, they also contained a provision that addressed the precise subject of the newly enacted statute at issue there. The Illinois Supreme Court in that case struck down the conflicting statute as unconstitutional and held that it represented an encroachment on the Court's paramount authority. Here we are addressing a conflict between an old, well-established, well-settled statute and a new Illinois Supreme Court order. So it's the opposite situation as in Kunkel. Further, the resolution in Kunkel was to declare the newly enacted statute as unconstitutional. Here there has been no allegation that the Speedy Trial Act is unconstitutional. And to the contrary, Illinois courts across the board have repeatedly upheld the statute as constitutional. So we would argue that Kunkel, upon which the State primarily relies, is critically distinguishable in several respects. Mayfield, out of the Second District, is actually the first case to hold that these — that whether we are following the Speedy Trial Act or not is merely a matter of procedure. So that's really the only published authority on that specific topic. And we would ask this Court to not side with the Mayfield Court and hold that this is a limitation on the prosecuting authority, not merely a matter of procedure. Ms. Anderson, there's an emergency management statute, or sometimes it was referred to as the pandemic statute, that allowed the governor, for example, to suspend a number of state statutes for a 30-day period. The Speedy Trial Act either didn't fall within that, or is there nothing in that act that would apply to that? For example, we know there were things — how to take oaths remotely was something that the governor suspended a part of the act on, that it didn't have to be in person, could be done by default. Are you aware if there's any overlap with that? That is to say, would the governor have had the power — let me just ask that. Would the governor, under that statute, would he have had the power to suspend the Speedy Trial Act? Yes, he would, under that statutory scheme. In particular, 20 ILCS 3305-6 specifically grants the governor broad emergency powers, and he could have suspended the Speedy Trial Act for 30 days. For 30 days. But he did not do so. Because what? He was — well, we don't know why, but presumably he was relying on the Supreme Court. Could it have been because the Supreme Court beat him to it? That could possibly be why. I can't presume, though, to speak as to the governor's action and inaction. In that 30-day period, it's designed to give the General Assembly time to convene and either approve it or disapprove it, presumably. Correct. Correct. And that also brings up another good point. And it is possible that part of the reason why the legislature did not act was because of the Illinois Supreme Court order. However, in that regard, the Illinois Supreme Court order served to insulate the legislatures from the consequences of their inaction and their decision not to take action here and pay attention to, you know, what is a significant — what should have been a matter of significant concern to the legislature. Counsel, I wanted to ask you about that language. You do say in the briefing the court should not insulate the legislators from their decision not to act. Now, is there any evidence or proof of this, that the court was attempting to do that? No, there is no proof that the court was attempting to do that. Thank you. And it is admittedly somewhat conjecture that it was the Illinois Supreme Court order that resulted in the legislature not acting. All we know is that they did not act. All right. Mr. Anderson, there was — I think there is a reference in the record to at some point, you know, when we got through the worst part of COVID, he is in court and, you know, he persists in his speedy trial demand and his jury demand. And the state says, we don't have any jurors today, Your Honor. And I don't think there is anything from your client at that point where he says, well, then bring them in from the street if you need to, because that's the remedy, isn't it? Respectfully, that would be one remedy. However, it's my understanding that defense counsel simply has to make the demand and also that the court was vetoing the demand in that case and saying that it was not possible. Pursuant to the direction of their superiors, right? Correct. Okay, counsel, we've got one more minute if you want to sum up, please. For these reasons and the reasons argued in our brief, we would ask this court to part ways with the Mayfield court, so to speak, and find that Mr. Areza's speedy trial rights were violated and vacate his conviction. Thank you. Thank you, counsel. Counsel Risky. May it please the court. Your Honors, this court should affirm the defendant's convictions because the Illinois Supreme Court, in the face of extraordinary and unprecedented circumstances, appropriately exercised its authority pursuant to the Illinois Constitution when it told the timing requirements of the Speedy Trial Act during the height of the COVID-19 pandemic. Therefore, the defendant's statutory right to a speedy trial was not violated. The issue before you, Your Honors, is narrow. The appellant is not contesting the authority of the Illinois Supreme Court or the Circuit Court of Cook County to order continuances during the pandemic or even to temporarily close courts during the pandemic. They are specifically arguing that the Illinois Supreme Court did not have the authority to toll a legislatively enacted statute, and therefore they're arguing that this was a violation of the separation of powers. Your Honors, even though this is a somewhat novel issue, you are not without the precedent of the published Mayfield case and also the Rule 23 persuasive authority out of the first, fourth, and fifth districts, and the Jones, Weiss, and the case I cited for my motion to cite additional authority, the Burton case. All of these cases are- Would we even have the power, though, to decide the case any other way? I don't believe so, Your Honor. I agree with your comment earlier. I think at this point, in light of the fact that it's- If that's true, isn't that a pretty strong indication that the issue's not justiciable? That is to say, we're not a rubber stamp. This just isn't the forum to decide the case one way or the other, so should we really entertain the merits? I believe that at this point, that is the decision for this court to make. I don't see, especially in light of the fact that the Mayfield case is up on a petition for leave to appeal and ultimately will be decided, I would assume, sometime early next year. At this point, as my colleague has mentioned, there are options for the court to just refrain from judgment until that decision comes down. Counsel, can I ask you to- Sure. I'm standing, so I'm going to attempt to do a distinguished comment. Please, if you want to tell us why that's- I'm sorry, Your Honor, I couldn't hear the case. Oh, I'm sorry, the Conkle case? The Conkle case, sure. Address the argument that was made, please. Absolutely. So in the Conkle case, which is obviously having a polite pun in our brief, our Supreme Court case where the decision came down that the separation of powers clause is not intended to effectuate this complete divorce, that in fact there's spheres of authority that coexist, and that there are certain functions that are shared. Specifically in this case, the shared functions are court procedure. Admittedly, the General Assembly has the right to issue laws regarding court procedure, but the Conkle case is saying is that when there's a conflict, and in our case inherently there is one, the Speedy Trial Act is a fundamental right, an important fundamental right. It reflects the public policy of not having individuals spend long durations in custody awaiting their trial. But in the face of the Speedy Trial Act and the authority of the Illinois Supreme Court when it comes to court procedure, we have these overlapping spheres. And what the Conkle court tells us is that when that happens, and the issue is regarding court procedure, the court, the act, excuse me, the orders issued by the Illinois Supreme Court are going to prevail over the legislation. But isn't, Conkle is so very different that it's just different in kind. That is to say, it's Marlboro versus Madison. It's judicial review. A court is reviewing whether a particular legislative enactment passes constitutional muster. This is something truly extraordinary, right? Where the Supreme Court issues an order pursuant to its supervisory authority that on its own, not in the context of a case, not in the context of judicial review, repeals a statute. Are you aware of any instance where anything even remotely like that has ever happened? Your Honor, I don't read the Mayfield cases repealing the Speedy Trial Act the way that the, in fact, the Mayfield court directly addresses this issue of suspension versus tolling. And the court says that the act was not suspended, that they tolled it. And in this situation... What we know is we have a defendant here who waited, what, 300 and some days on demand before he got his jury trial. And that's pursuant to an order that purported to suspend, override, whatever toll, whatever word you want to use, a statutory right. And I think a review of the orders, which I attached in an appendix, there's close to 120 pages of them, this series of orders that were issued over time. The orders reflect the court's acknowledgement that this is a fundamental right. And they attempted to balance that right in light of the circumstances. It's not that far in the rear view mirror to recall the beginning of this pandemic and the lack of science. Was it on surfaces? Was it airborne? What's the correct distance to seat people? What's the correct medical treatment, etc.? There was a lot of unknowns. And if you look at the evolution of these orders, they do honor the intent of the Speedy Trial Act, which was to get people into court and have their day in court as fast as possible. You can see over time the court is adding back in, as is possible and safe, Zoom hearings, video conferencing. What would have been the patchwork problem? That is to say, Cook County was dead last in bringing jury trials to criminal defendants. Everett County, my recollection, my understanding, was ahead of Cook County. Is that just something we live with? Well, I think also the Burton court does touch on that because the defendant in Burton did talk about sort of that exact issue, Your Honor. And what the court in Burton responds is that they're not in a position to second-guess Chief Judge Evans and the ability to put certain— We aren't. He's a lower court. If there's anybody we can second-guess, it would be Judge Evans. I'm referencing the Burton court, Your Honor. And I think especially when you're talking about jury trials, too. In fact, bench trials were brought back in June or July of 2020. I did the very first bench trial in Zoom in June of 2020. So as you can see, the Illinois Supreme Court and the Supreme Court is honoring the intention of the Speedy Trial Act, trying to bring back these cases. And juries in particular are a very different situation for anyone who's been called to jury duty, the hundreds of people coming into a jury pool, the maneuvering of people through courtrooms and sitting next to each other and hearing testimony. So it is unfortunate that the juries took that long. What the specifics were for Chief Judge Evans or the court layout or the size of Cook County, I don't have an answer for you for that in particular, Your Honor, why juries took that long other than the inherent nature of bringing back the jury trials. Ms. Reske, one thing that's backfired on me here is, you know, this case is grounded in two great constitutional rights. One is the right to a speedy trial in a criminal case, and one is the right to a jury trial. And it begs, everything that we've talked about this afternoon begs the question about how long is too long? And is there a point where we have to say pandemic or no pandemic? We're just going to dismiss these prosecutions. And what bothered me when all this was going on was what seemed to be the reluctance of court administrators, meaning chief judges, to come up with a way to do it. And there was a way to do it. You just get a gymnasium or a ballroom or something if you have to and see people 15 feet apart. And there were grocery stores where people were shopping, things like that. And suddenly, you know, for some reason jury trials just ground to a halt. And as Justice Mitchell said, Cook County seemed to be the last one to get their act together on this. And at what point do we have to say these constitutional rights have to govern and you can't keep people parked in Cook County Jail for 300 days? I understand everything that you're stating, Your Honor. And I don't think that there's anyone who disagrees that people should not have stayed in jail that long awaiting their trial. Here, the issue before the court is did the Illinois Supreme Court have the authority to issue those tolling rules? And that's really what's before your honors. And the decisions that were made court by court, triage by triage, bringing back different cases, I don't have an answer for you for why it took so long in Cook County. I wouldn't expect you to have an answer. But the point is that, you know, part of your argument here is, well, there's no alternative. Well, there were alternatives. You just get bigger rolls. You figure out which criminal trials where there's a demand and the defendants insisting on going and then park them in a big gym or a ballroom or something. Or you could go on a bus to DuPage where they had modified a courtroom. Counsel, let me ask you this. Is there any indication we should consider public safety here? Let's say you've got a Cook County Jail full of 500 murderers and they all demand and we let them go during a pandemic. I mean, is there any consideration of that at all? Or is that it should not be considered? Certainly, Your Honor. And as you are all well aware, during the course of the pandemic, there were lots of bond hearings, a lot of electronic monitoring, and the courts trying to release people awaiting trial that perhaps were on less serious offenses or less violent offenses. So, again, the courts were honoring the public policy behind the Speedy Trial Act. But in some situations, the defendant here, in fact, had multiple bond hearings. But the facts of his case presented to the trial court, which were the allegation of a criminal sexual assault against a minor household member. In that case, his bond reviews were denied and he was kept in custody. And so, certainly, there was not only the concern the courts had for the health and safety of people coming into the courthouses and court personnel, there was also the balancing of letting out potentially violent offenders to await a trial at a future date. So, all of this, Your Honors, really can't be overstated. It needs to be viewed through the lens of the pandemic and that evolution. In trial transcripts I've read, not in particular this one, to a degree this one, but there are many court dates where trial judges were just giving short dates thinking, hopefully we'll have a jury in the courtroom in two weeks, hopefully we'll have a jury in three weeks. And so, part of perhaps when we were speaking earlier about why the legislature didn't intervene and pass some legislation regarding the Speedy Trial Act, there's also a possibility that there was this evolution where maybe next week we will be back to juries or the following week after that we'll be back to juries. And so, when you look at the entirety of the circumstances, it would have been great if we could have gotten jury trials going faster. In this situation, in this circuit court, they were not. And this defendant did wait a long time for his trial. But again, Your Honors, going back to the idea of did the court at this time have the authority to issue these rules, the Kunkel Court, as Your Honor was asking me earlier, has clearly stated that when the issue is the court administration, court procedure, which it was in this case, the court rule is going to prevail over the legislation. And part of that reasoning has to do with the separation of powers itself, the idea that the judiciary has its own sphere of authority. And when a legislation contrasts or conflicts with the court order, the court has the authority to issue its orders regarding the court procedure. And in this case, the Mayfield case described that as the scheduling of trials, which of course is inherently tied to the Speedy Trial Act. It's difficult to be given your date in trial if you don't have a place to have it and personnel to hear it. Any other questions? Please finish up. Sure. In conclusion, Your Honors, I would just state that the Illinois Supreme Court and the Circuit Court of Cook County had primary constitutional authority over the courts and acted within the constitutional authority in tolling the terms under the Speedy Trial Act in this instance due to the pandemic. Here, the courts told Defendant Speedy Trial Term for most of the time that he was in custody. And therefore, Defendant received a timely trial in this matter. And we ask that his convictions be affirmed. Thank you, Judge. Thank you. Your Honors, I have just a few brief points on rebuttal. Earlier, I talked about how the legislature could have taken action to prevent this situation and also the governor. I would like to take a moment to talk about how the State here also could have taken actions that would have ensured that the Speedy Trial Act was complied with. For example, the State could have told the Speedy Trial Term by filing a motion to nolle the charges would leave to reinstate. That would have served to protect my client and also ensure that there were no violations of the Speedy Trial Act, and the State could have refiled. It only gets to a year, though, doesn't it, if I recall? I believe you are correct, but I would need to double-check that. The State also could have released my client from custody, though, which would have restarted the Speedy Trial Clause. My client was eager to get out of custody, so it's possible that he would have been willing to enter into an agreement to waive speedy trial rights if he was released from custody. So the State was not without recourse here. And I also think it's important to keep in mind that when we are talking about protecting the citizens of the State from the coronavirus pandemic, that includes my client and that includes everyone else who was held in Cook County Jail, particularly those who had not yet been convicted of an offense like my client. The Speedy Trial Act is supposed to be liberally construed in a manner that protects defendants, which in turn protects all of the State's citizens from prosecutorial overreach. The State's argument here would allow the Illinois Supreme Court unlimited authority to simply toll the speedy trial term with no check on the Illinois Supreme Court's authority to do so, which is inconsistent with the statute. If there are no questions, thank you for your time and your consideration of this important issue. Thank you both for your excellent presentations here today. We will be adjourned and you will be hearing from us shortly.